Cite as 2025 Ark. App. 32

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CR-24-242

| | |
|---|---|
| RAUL AARGON CASTRO<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered January 22, 2025<br><br>APPEAL FROM THE SEARCY COUNTY CIRCUIT COURT<br>[NO. 65CR-21-9]<br><br>HONORABLE H.G. FOSTER, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

**WAYMOND M. BROWN, Judge**

This no-merit appeal stems from the Searcy County Circuit Court's revocation of appellant Raul Castro's probationary sentence. Pursuant to *Anders v. California*,[1] and Arkansas Supreme Court Rule 4–3(b)(1),[2] Castro's counsel has filed a motion to withdraw and a no-merit brief stating there are no meritorious grounds to support an appeal. The clerk of this court mailed a certified copy of counsel's motion and brief to Castro informing him of his right to file pro se points for reversal; he has elected to do so. The State responded to the pro se points filed by Castro, contending that the points lack convincing argument, are unsupported by citation to legal authority, are not preserved for appeal, or are otherwise without merit. Having reviewed the record, we affirm the revocation of Castro's probation and grant counsel's motion to withdraw.

---

[1] 386 U.S. 738 (1967).

[2] (2021).

On November 9, 2021, Castro pleaded guilty to possession of a firearm by certain persons in violation of Arkansas Code Annotated section 5-73-103.[3]  He was sentenced to a period of three years' probation.  Also on November 9, Castro signed the conditions of probation acknowledging that he understood the probationary rules.  Among other terms, condition number 2 provides, "That you abstain from the use of alcoholic beverages or be present in any establishment in where its main source of income is derived from the sale of alcohol."  Condition number 6 provides, in part, "That you shall report to the Probation Office of the Circuit Court as directed[.]"

On March 11, 2022, the State filed a petition to revoke Castro's probation, alleging that he violated certain conditions of his probation.  Specifically, the State alleged that on November 16, 2021, Castro reported to the probation office while under the influence of alcohol, which was confirmed by an alcohol breathalyzer test; and he failed to report on February 1, February 17, and March 1, 2022.

At the September 13, 2023, revocation hearing, Agent Lisa Wells testified that she was charged with supervising Castro's probation.  She stated that on November 16, 2021, Castro reported to the probation office.  Because she believed he was under the influence of alcohol, a breathalyzer test was conducted by the Mountain View Police Department; Castro blew a 0.354 on the test.  He was then transported to jail for public intoxication.  Agent Wells stated that following Castro's release from jail, he was medically transported to the hospital due to his level of intoxication.  After his release from the hospital, Castro reported to the probation office, and then his supervision was transferred to Pulaski County.  Agent Wells testified that Castro failed to report to the Pulaski

---

[3](Supp. 2021).

County office for his scheduled visit on February 1, 2022. A letter was then mailed to Castro instructing him to report on February 17; he failed to do so. On February 28, a home visit was conducted, and instructions were left for Castro to report on March 1; again, he failed to report. Agent Wells testified that prior to being picked up on the revocation warrant, the probation office had no contact with Castro. She clarified on redirect that the revocation warrant was issued in March 2022, and Castro was not in custody on the warrant until June 2023, a period of fifteen months during which the probation office had no contact with Castro.

Next, Officer Hettie Parker testified. She stated that call records showed that Castro called the Searcy County jail eleven times between March 2022 and January 2023 and spoke with either Officer Parker or other staff persons. She stated that each time he called, he asked if he had a warrant for his arrest and inquired how to handle the warrant. Officer Parker testified that Castro was repeatedly informed that he needed to turn himself in.

Castro also testified at the revocation hearing. He explained that he turned himself in to the jail on June 15, the day after he was released from the hospital where he had his gallbladder removed. Castro acknowledged that his probation was transferred to the Pulaski County office. He stated that he reported for intake on the day instructed, signed in, and waited for more than two hours; he was then informed that his supervising officer was not there and was told to "come back another day." Castro stated that for his next scheduled probation visit, he tried to contact the office to let them know he was "running late," but they did not answer the phone. When he arrived, he again signed in and filled out the monthly report. Castro testified that he was informed that the computer system and phone lines were down and that his supervising officer was busy, so he left. Following that visit, his supervising officer called and asked why he had not reported. Castro testified that he explained

3

what happened and she said okay. He stated that the letter he received from the probation office pertained to his fines and did not list another date for a probation visit. Castro further denied that a home visit was attempted and denied there was a note on the door of his residence regarding reporting for a probation visit. Castro went on to testify that he attempted to pay his fines; however, his supervising officer said "no. We have to do a money order." He stated that he repeatedly called his supervising officer and left messages until "the voice mailbox was full."

The court interrupted Castro's testimony to ask Castro's counsel whether Castro had been informed that making false statements of material facts provides a basis for a perjury charge. The court explained that Castro's extensive testimony was full of facts that could be checked—cell phone records and paperwork from the probation office. Castro's counsel assured the court that the consequences of making false statements had been explained to Castro.

Castro resumed testimony. He was asked, "And you had - - the State indicates you registered fairly high on an alcohol test." Castro responded, "Yes, ma'am." He stated that following that incident, he sought treatment for alcoholism and underwent a medical detox. Castro stated that "medical stuff" prevented him from reporting for his probation visits. He explained that he had his gallbladder removed and underwent four endoscopes to address stomach lesions and internal bleeding. The court interjected, asking if there were medical papers supporting Castro's testimony; Castro's counsel stated, "There are none to be proposed to be submitted, Your Honor." When asked if he had any other excuse or explanation for his failure to report, Castro stated, "No. It was mistaken procrastination I guess." Castro stated that he wanted to take care of his medical issues and "get some money together" for his wife and son and to try to hire an attorney.

4

On cross-examination, Castro admitted that when he turned himself in on the warrant, he produced no evidence of hospitalizations or medical procedures, nor did he provide any documentation to either his counsel or the court in preparation for the probation-revocation hearing.

The circuit court noted Castro's absence of paperwork or other evidence to support his claim that he reported for probation visits as well as a complete lack of medical records to support his contention that he was hospitalized on multiple occasions, which interfered with his ability to report for probation or present himself on the warrant for an extended period. The circuit court stated,

> I will observe for the record that based on my opportunity to observe the witness, his demeanor, the fidgeting on the stand, the sweating, the talking fast, talking over, saying things that are inconsistent and putting everything on everybody else. I mean being gone that long and say that it was a result of miscommunication on both sides. I'm gonna say that his credibility is poor.

The circuit court found the State proved by a preponderance of the evidence that Castro had violated the terms of his probation. Consequently, the court revoked Castro's probation and sentenced him to a term of six years' incarceration in the Arkansas Division of Correction and imposed a $10,000 fine. This no-merit appeal followed.

In considering a no-merit brief, we must determine whether, after a full examination of the proceedings, there is any nonfrivolous basis for an appeal.[4] The test is not whether there is any reversible error but whether an appeal would be wholly frivolous.[5] Counsel's brief must contain a list of all rulings adverse to the defendant made by the circuit court on all objections, motions, and requests made by either party with an explanation as to why each adverse ruling is not a meritorious

---

[4]*Bohanon v. State*, 2020 Ark. App. 22, 594 S.W.3d 92.

[5]*Id.*

ground for reversal.[6] Here, counsel's brief identifies only one adverse ruling: the decision to revoke Castro's probation. Counsel asserts that this is the only ruling adverse to Castro, and it provides no meritorious ground for appeal.

Castro's counsel contends that there is no nonfrivolous argument that could serve as the basis for an appeal regarding the sufficiency of the evidence. Probation may be revoked upon a finding by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of the probation.[7] The State bears the burden of proof but need only prove that the defendant committed one violation of the conditions.[8] We will not reverse a circuit court's revocation decision unless it is clearly against the preponderance of the evidence.[9] Determining whether a preponderance of the evidence exists turns on questions of credibility and weight to be given to the testimony.[10]

Testimony at the revocation hearing supports the circuit court's decision to revoke Castro's probationary sentence. Agent Lisa Wells testified that on November 16, 2021, only one week after Castro's probation had begun, he reported to the probation office while under the influence of alcohol. A breathalyzer test result of 0.354 confirmed that Castro was heavily intoxicated. In his own testimony, Castro admitted that he registered four times the legal limit on the alcohol test but stated that he then sought treatment for alcoholism. The conditions of Castro's probation required

---

[6]*Id.*

[7]*Leach v. State*, 2015 Ark. App. 17, 453 S.W.3d 690.

[8]*Id.*

[9]*Id.*

[10]*Stewart v. State*, 2021 Ark. App. 289, 624 S.W.3d 357.

that he abstain from the use of alcohol. He incontestably failed to do so; thus, the revocation does not present a meritorious ground for reversal.

In a thorough review of the record, counsel addressed the only objection made by either party at the revocation hearing. At the close of the hearing, the circuit court announced that it was revoking Castro's probation and imposing a twenty-year sentence; counsel objected, arguing that it exceeded the maximum sentence for the charge. After some discussion, the circuit court agreed and imposed a six-year sentence, which is within the allowable sentence range for a Class D felony. Because the objection was resolved in Castro's favor, it is not an adverse ruling and provides no ground for reversal. We are satisfied that counsel has demonstrated there is no nonfrivolous argument that could serve as the basis for an appeal.

As is his right, Castro filed pro se points for reversal. First, he refutes Agent Wells's testimony; he reiterates that he repeatedly called, left messages, and visited the probation office but was unsuccessful in contacting Agent Wells. He appears to argue that the probation office was lying about his alleged attempts to report; he argues that he filled out monthly reports at the probation office, and there should be video of his appearance and call-log records of his attempts to reach Agent Wells. These arguments go to the sufficiency of the evidence supporting the revocation, which we have already addressed above.

Castro's remaining arguments, as best we can decipher, include claims of bias by the circuit court, the inadmissibility of portable breathalyzer results, a Fifth Amendment claim against self-incrimination, and the ineffective-assistance-of-counsel claim for failure to obtain medical and phone records on his behalf. Because his pro se points are not preserved for appellate review, not supported

7

by citation to legal authority or convincing argument, or are not appropriate on direct appeal, they do not offer a basis for reversal.

From our review of the record and the brief presented to this court, we hold that counsel has complied with the directives of *Anders* and Rule 4-3, and the appeal is without merit. Accordingly, we affirm the circuit court's revocation of Castro's probation and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

BARRETT and HIXSON, JJ., agree.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.